ASPHALT PRODUCTS CORPORATION, DBA APCO EQUIPMENT, APPELLANT, v. ALL STAR READY MIX, INC., AND DENNIS L. WADKINS, RESPONDENTS.

No. 25480

June 27, 1995                    898 P.2d 699

*Gifford & Vernon* and *James M. Barker,* Las Vegas, for Appellant.

*George D. Frame,* Las Vegas, for Respondents.

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

## OPINION

*Per Curiam:*

Appellant Asphalt Products Corp. (APCO) sold and delivered a tractor to respondent All Star Ready Mix, Inc. (All Star). The delivery was made even though All Star was still attempting to obtain financing and had made no payments to APCO. After All Star had the tractor for ten weeks, but still had not obtained financing, APCO repossessed it. The district court found that All Star had been unjustly enriched by using the tractor for ten weeks without making a payment and awarded APCO damages.

We conclude, however, that the district court's computation of the award went against the substantial evidence as to the reasonable rental value of the equipment, and we remand for a new determination of damages.

### FACTS

APCO sold All Star a FD40B Fiatallis Crawler Tractor with a full bulldozer blade for All Star to use in its ready mix concrete business. The total purchase price was $467,000.00. However, because APCO did not arrange financing on its equipment, the two companies did not execute a written purchase agreement. All Star merely gave APCO its written intent to purchase the tractor for the agreed upon price. Pending the approval of All Star's financing, APCO delivered the tractor to All Star. Upon delivery, All Star began using the tractor in its ready mix concrete

business—three shifts a day, approximately twenty to twenty-one hours a day—on the assumption that it owned the tractor. This amount of usage continued the entire time All Star possessed the tractor, approximately ten weeks.

Initially, the sale of the tractor was to be financed through Orix Credit Alliance. Because the agreement between APCO and All Star only established that All Star would begin payments to APCO once it obtained financing, APCO did not receive any money on the purchase price at the time of the delivery of the tractor or at any time prior to the repossession. However, the proposed financing with Orix fell through. All Star was having trouble obtaining financing, so when Fidelity Leasing contacted APCO regarding potential customers, APCO suggested All Star. This was the only contact APCO ever had with Fidelity.

On May 17, 1991, All Star received a letter of commitment to enter into a financing agreement with Fidelity through its assignee E.M.I. Eastman Industries, Inc. Payment on the lease was to be $10,427.17 per month for sixty months with a $1.00 buyout option at the end. On May 20, 1991, All Star made an advance payment to E.M.I. of $10,000.00 to be used as earnest money. The interest rate was twelve and one-half percent.

When the deal between E.M.I. and All Star faltered and All Star still did not have financing, APCO repossessed the tractor. At the time APCO repossessed the tractor, All Star had used the equipment so extensively over the ten weeks that it had put a total of 1,114 hours of usage on the tractor.

After repossessing the tractor, APCO presented All Star with a rental invoice for the ten weeks All Star possessed the tractor. The invoice quoted a total figure of $89,199.00. APCO's published monthly rental rate was $18,000.00 per month based on a usage of up to 176 hours per month. Usage for three shifts per day, up to twenty-four hours a day, doubles APCO's rate, increasing the monthly rental rate to $36,000.00.

Based on these rates and the number of hours All Star used the tractor, the base rate for rental was $76,320.00. The rental figure of $89,199.00 given to All Star included that base rate, plus sales tax and the damage and theft waiver. When All Star refused to pay APCO's rental invoice, APCO instituted a suit against All Star claiming breach of contract for sale of the equipment and unjust enrichment.

After the repossession, All Star rented a comparable tractor from a different company. The rental rate on the new tractor was $18,000.00 per month; however, All Star did not have to pay for overtime shifts because it planned to purchase the new tractor.

The district court found, based on the principle of unjust enrichment, that APCO was entitled to recover from All Star the

reasonable rental value of the equipment of $10,400.00 per month for the ten weeks. Additionally, the district court allowed All Star a setoff of $10,000.00 based on the amount All Star paid to E.M.I. in attempting to obtain financing. The net amount of damages awarded to APCO was $13,547.17. APCO appealed the damage portion of the judgment entered by the district court.

## DISCUSSION

"A district court is given wide discretion in calculating an award of damages and an award will not be disturbed on appeal absent an abuse of discretion." Flamingo Realty v. Midwest Development, 110 Nev. 984, 987, 879 P.2d 69, 71 (1994). But, in all actions tried without a jury, the district court must " 'find the facts specially and state separately its conclusions of law.' " Schoepe v. Pacific Silver Corp., 109 Nev. 941, 943, 860 P.2d 166, 168 (1993) (quoting NRCP 52(a)).

In the case at bar, the district court properly determined that All Star, by using the tractor for ten weeks without making a payment, was unjustly enriched. Unjust enrichment is " 'the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience.' " Topaz Mutual Co. v. Marsh, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (quoting Nevada Industrial Dev. v. Benedetti, 103 Nev. 360, 363 n.2, 741 P.2d 802, 804 n.2 (1987)). In a case with a quantum meruit or unjust enrichment theory of recovery, the proper measure of damages is the " 'reasonable value of [the] services.' " Flamingo Realty, 110 Nev. at 987, 879 P.2d at 71 (quoting Morrow v. Barger, 103 Nev. 247, 252, 737 P.2d 1153, 1156 (1991)). In determining the proper measure of damages, we have acknowledged the "applicability of 'established customs' when determining the 'reasonable value' of . . . services." Flamingo Realty, 110 Nev. at 988, 879 P.2d at 71.

Substantial evidence does not support the district court's determination of $10,400.00 per month as the reasonable rental value of the tractor. Substantial evidence is that which " 'a reasonable mind might accept as adequate to support a conclusion.' " State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). The district court, as the trier of fact, ignored the evidence of the reasonable rental value in determining that All Star owed APCO the "reasonable rental value" of the equipment at a rate of $10,400.00 per month. The district court apparently

based this on the monthly lease payment of $10,427.17 the parties originally agreed to. However, this amount reflected an arrangement to purchase the tractor after a total of sixty such payments. It did not reflect a rental agreement. All Star worked the tractor as many hours as it did assuming that it owned the machine and would not be responsible for any extra costs based on overtime.

APCO claims that the district court should have awarded it the total sum of its published rental and overtime rates which would have totaled $76,320.00 for the time All Star used the tractor. The rental rate on the second tractor All Star rented was $18,000.00 per month, including overtime hours; said rate was based on All Star's intent to purchase the tractor. There was no independent expert who testified as to the reasonable rental value given All Star's use of the tractor.

In Schoepe v. Pacific Silver Corp., 109 Nev. 941, 860 P.2d 166 (1993), this court stated the following in regard to a calculation of rental based on a motion to determine reasonable rental value:

> In determining the reasonable rental value, the district court ruled on a *motion,* which NRCP 52(a) excludes from the factual findings and legal conclusions requirement. However, the record does not contain any intimation of how the district court arrived at the rental figure or what calculation method the court employed. While it is true that both PSC and Schoepe suggested methods to calculate the rental value, it appears that the district court did not utilize any of the suggested methods to arrive at the $26,398.05 figure. In turn, without findings of fact and conclusions of law, this court has no way of assessing whether the rental award constitutes a "reasonable" rate of return.
>
> Thus, we conclude that the district court erred in failing to explain its rationale for formulating the reasonable rental value and we remand this matter for an explanation of the district court's method used to calculate the rental value.

*Id.* at 943-44, 860 P.2d at 168. Although the district judge here included the $10,400.00 rental rate in his conclusions of law, he provided no rationale for going against substantial evidence that the rental value should have been higher than the amount he awarded.

The district court also allowed All Star a $10,000.00 setoff from APCO's award for the money All Star paid E.M.I. in attempting to obtain financing for the tractor. APCO contends that it was not a party to the lease/purchase agreement and

therefore should not have its award set off by the amount of All Star's payment of earnest money to E.M.I. We agree. The $10,000.00 was paid directly to E.M.I. and APCO received no part of that. Therefore, setting off APCO's award by this amount was error.

Despite the conflicting arguments of the parties regarding the role that the seller generally plays in helping a buyer obtain financing for this type of equipment, no evidence exists linking APCO to the financing agreement as either a party or an assignee of E.M.I. or Fidelity. Although the $10,000.00 was not returned to All Star, no evidence exists that All Star made any attempt to collect it from E.M.I. E.M.I., not APCO, is the proper party for All Star to look to in order to receive a return of this money. Therefore, the district court's decision to grant the setoff was arbitrary and not supported by substantial evidence.

## CONCLUSION

Based on the evidence presented at trial, the district court erred in setting the reasonable rental value of the dozer at $10,400.00 per month and allowing All Star to set off the $10,000.00. Accordingly, we affirm the district court's judgment that APCO be awarded damages for the unjust enrichment All Star derived from its use of the tractor, but we reverse the district court's judgment as to the amount of damages and its granting of the setoff. We remand this case to the district court for a new trial based solely on the issue of damages.